**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DISTRICT**

| | |
|---|---|
| **DELIA REID**<br>1227 Corbett Street<br>Cincinnati, Ohio 45208<br><br>Plaintiff,<br><br>v.<br><br>**UNITED RADIO, INC. d/b/a BLUESTAR, INC.**<br>3345 Point Pleasant Road<br>Hebron, Kentucky 41048<br><br>*Also serve:*<br>Doug Bivins (Statutory Agent)<br>3345 Point Pleasant Road<br>Hebron, Kentucky 41048<br><br>**WILLIAM R. GIRVIN**<br>2162 Clarkston Lane<br>Union, KY 41091-9753<br><br>**MELISSA C. BOLEN**<br>1835 Fair Meadow Drive<br>Florence, KY 41042-8064<br><br>**DAVID VON HOENE**<br>3515 Reeves Drive<br>Covington, KY 41017-9436<br><br>Defendants. | Case No. __________________<br><br>Judge ___________________<br><br>**COMPLAINT WITH JURY DEMAND** |

NOW COMES Plaintiff Delia Reid ("Plaintiff" or "Reid"), and for her complaint against Defendants United Radio, Inc. d/b/a BlueStar, Inc. ("Defendant" or "BlueStar"), William R. Girvin ("Girvin"), Melissa Bolen ("Bolen"), and David Von Hoene ("Von Hoene"), hereby states as follows:

## PARTIES

1. Plaintiff Delia Reid is a United States citizen residing at 1227 Corbett Street, Cincinnati, Ohio 45208.

2. Defendant United Radio, Inc. d/b/a Bluestar, Inc. ("BlueStar") is a Kentucky corporation with over 300 employees in the state of Kentucky, and a principal place of business at 3345 Point Pleasant Road, Hebron, Kentucky 41048.

3. Defendant William R. Girvin is a United States citizen, and a resident of the State of Kentucky. During all relevant periods, Girvin was BlueStar's Chief Executive Officer (CEO).

4. Defendant Melissa C. Bolen is a United States citizen and a resident of the State of Kentucky. During all relevant periods, Bolen was BlueStar's Vice President of Human Resources and/or Chief People Officer (CPO).

5. Defendant David Von Hoene is a United States citizen, and a resident of the State of Kentucky. During all relevant periods, Von Hoene was BlueStar's Chief Financial Officer (CFO).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under one or more federal statutes including 29 U.S.C. 206(d)(the "Equal Pay Act" or "EPA"), and 42 U.S.C. 2000(e), *et seq.* ("Title VII")

7. This Court has supplemental jurisdiction over Plaintiffs' Kentucky statutory and common law claims pursuant to 28 U.S.C. § 1367, as the claims are so related to the federal claims that they form part of the same case or controversy.

8. Defendant BlueStar is subject to personal jurisdiction in the State of Kentucky because it transacts business and employs a significant number of employees within the State of Kentucky.

9. Defendants Girvin, Bolen, and Von Hoene are also subject to personal jurisdiction in the State of Kentucky because each is a citizen of the state of Kentucky, is employed in the State of Kentucky, and are alleged to have committed acts and omissions forming the basis of Plaintiff's claims in the State of Kentucky.

10. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391 because BlueStar conducts business within this District in the State of Kentucky, and the acts giving rise to the claims for relief set forth in this Complaint took place within this District in the State of Kentucky.

**BACKGROUND AND FACTS APPLICABLE TO ALL CAUSES OF ACTION**

11. Plaintiff is a female, and has been a licensed attorney 1998.

12. Throughout her career, Plaintiff has been employed and rendered legal advice to large, technology-based corporations and financial institutions, both in an in-house and outside counsel capacity.

13. Plaintiff holds multiple certifications relating to her practice, including as a Certified Information Privacy Professional ("CIPP/US"), Certified Information Privacy Manager ("CIPM"), and Artificial Intelligence Governance Professional ("AIGP").

14. Plaintiff's prior work experience has included serving as Corporate Counsel for Cincinnati Bell, Inc., LexisNexis Group, Home City Ice Company, as a Vice President – Senior Counsel at Fifth Third Bank N.A., and as a Corporate Practice Associate at Baker & Hostetler, LLP.

15. On July 14, 2025, while Plaintiff was still employed at Baker Hostetler, a third-party recruiter with LHH Recruiting reached out to Plaintiff with an opportunity for a "GC" (General Counsel) position at a technology-based company.

16. The General Counsel role described by the recruiter interested Plaintiff, given a technology-based company fit with Plaintiff's experience, and was seen as an opportunity to grow her career in serving as the primary counsel for a technology-based corporation.

17. As it turned out, the "tech company" the recruiter referenced was BlueStar.

18. BlueStar's former General Counsel, Jeff Rosenstiel, had retired in approximately July 2025.

19. BlueStar was seeking a replacement for the General Counsel role.

20. At the time of Mr. Rosenstiel's retirement, Mr. Rosenstiel had served as BlueStar's General Counsel for 6 years and had been licensed for approximately 27 years, substantially equivalent to Plaintiff's experience at the time, in which she had been licensed for at least 25 years, 18 of which were in commercial and technology transactions and on a broad range of corporate matters.

21. Mr. Rosenstiel's role as General Counsel at BlueStar included overseeing and leading BlueStar's legal strategy, advising the CEO and other BlueStar executives on legal matters, and overseeing all legal matters including pending litigation.

22. Plaintiff responded to the recruiter with an interest in learning more about the GC position and on August 5, 2025, submitted her resume and a cover letter expressing an interest in the role.

23. On August 13, 2025, Defendant Melissa "Missie" Bolen (BlueStar's VP of Human Resources at the time), requested an interview with Plaintiff.

24. Plaintiff's interview with Bolen occurred on August 18, 2025.

25. During the interview, Bolen confirmed the company was seeking a General Counsel for BlueStar, and that the role entailed being "the company's attorney."

26. Bolen also confirmed the functions of the role were commensurate with a gGeneral Counsel, including overseeing the company's legal strategy, reporting directly to the CEO, working on the company's executive team, and handling a broad range of corporate matters.

27. Following the interview, Plaintiff sent a thank you note to Bolen, stating in pertinent part:

> Dear Missie,
>
> Thank you for taking the time today to discuss the General Counsel position at BlueStar[…] the comprehensive scope of the General Counsel position aligns with my broad legal experience in commercial and technology contract negotiations, board governance, regulatory compliance, IP portfolio management, and dispute/litigation management.

28. Bolen did not respond, nor did she at any time indicate to Plaintiff that the open position was not a role as the company's General Counsel.

29. On August 21, 2025, BlueStar requested a second interview with Plaintiff, this time with Defendants Ryan Girvin (CEO), and Dave Von Hoene (CFO).

30. Plaintiff interviewed with Von Hoene on August 26, 2025..

31. During the interview, Von Hoene described the functions of the role consistent with what Bolen had described.

32. Also during the interview, Von Hoene inquired to Plaintiff whether she would want the "General Counsel" title.

33. Plaintiff confirmed that the title was appropriate, and consistent with how the position was being described.

34. That evening, Plaintiff again sent a thank you note to Mr. Von Hoene, stating in pertinent part:

> Dear Dave,
>
> Thank you for the opportunity to discuss my interest in the General Counsel position with BlueStar today.
>
> Our conversation deepened my excitement about this role, particularly as you described BlueStar's impressive ability to achieve sustained growth in the reseller market by adapting to change and leveraging emerging technologies[…]I am confident that my 18 years of experience would allow me to add immediate value as BlueStar's General Counsel[…]

35. Von Hoene did not respond, nor did he at any time indicate to Plaintiff that the open position was not a role as the company's General Counsel.

36. On September 5, 2025, Plaintiff had her third BlueStar interview, this time with CEO Ryan Girvin and Nathan Blaske, Partner at Dinsmore & Shohl.

37. Upon information and belief, Blaske and Dinsmore performed work as outside counsel for BlueStar, including labor and employment and collections work.

38. This interview covered a broad scope of legal functions for BlueStar, with both Mr. Blaske and Girvin inquiring to Plaintiff as to her qualifications for the General Counsel role, her experience in mergers and acquisitions, and with corporate/board matters.

39. Mr. Blaske, as outside counsel to BlueStar, specifically questioned Plaintiff as to her qualifications, including her experience in corporate matters, oversight of litigation matters, and other duties commensurate with the role of General Counsel.

40. Defendant Girvin informed Plaintiff that her priority for the first 90 days would be to become familiar with BlueStar's board matters and corporate entities, including its governance records, organizational structure, and subsidiaries.

41. Following this interview, Plaintiff sent thank you notes to both Girvin and Blaske, again thanking them for their time in interviewing her for the General Counsel position.

42. Plaintiff's thank you note to Girvin specifically stated that, "[a]s BlueStar's General Counsel, I would work to create relationships with stakeholders to effectively support their initiatives, resolve problems, and serve as a trusted advisor[,]" and, "I would learn the Board's unique dynamics and priorities by understanding BlueStar's governance culture and processes so that I can provide effective counsel in anticipation of needs, ensuring legal considerations are woven into strategic discussions."

43. Plaintiff's thank you note to Blaske thanked him for "meeting with me yesterday to participate in my interview for the General Counsel position at BlueStar" and "found your perspective as outside counsel to provide valuable context about the company's legal landscape and the challenges that have faced the organization," and, "our discussion reinforced my enthusiasm for the position and my belief that my experience in commercial and technology transactions and corporate governance will enable me to contribute meaningfully to BlueStar's continued success[,]" and, finally "I hope I was able to effectively convey my qualifications for the role…do not hesitate to reach out if you have additional questions about my background or experience."

44. Neither Girvin nor Blaske responded to the thank you e-mails, nor did either ever indicate to Plaintiff that the interview was not for the role of General Counsel.

45. Following these interviews, Ms. Reid was offered the General Counsel position via a written job offer from Bolen, dated September 12, 2025 which stated, "it is my pleasure to confirm our offer of employment to you with BlueStar as General Counsel reporting to Ryan Girvin with a start date of October 6, 2025."

46. The written job offer provided a salary of $200,000 per year, along with a "prorated incentive plan valued at $20,000" and with employment at BlueStar's Hebron Corporate Office.

47. The written job offer also contained an addendum agreeing to reimburse Plaintiff for an annual Practicing Law Institute (PLI) subscription, annual bar dues, annual IAPP certification, and annual membership to the Associate of Corporate Counsel (ACC).

48. Plaintiff was not aware at the time she accepted this offer that her male predecessor, Mr. Rosenstiel, whom had held the same General Counsel title and position, was paid substantially more in compensation than Plaintiff.

49. Mr. Rosenstiel's exact and complete compensation during his time as General Counsel of BlueStar is a subject of discovery in this lawsuit, but since Plaintiff's termination BlueStar has indicated that "Mr. Rosenstiel's salary at the end of his tenure as General Counsel for BlueStar was $275,000."

50. In addition to the $275,000.00 BlueStar states it paid in salary to Mr. Rosenstiel in 2026, upon information and belief BlueStar paid Mr. Rosenstiel other compensation, including scheduled bonuses and other incentives.

51. Plaintiff accepted the offer without knowing of the significant pay disparity, and began her employment as BlueStar's General Counsel on October 6, 2025.

52. On Plaintiff's first day, BlueStar sent a company-wide e-mail announcing Plaintiff hiring and job responsibilities, stating in pertinent part:

> BlueStar Teams,
>
> We are thrilled to announce today that Delia Reid has joined BlueStar as our new General Counsel, reporting directly to Ryan Girvin.
>
> Delia brings a wealth of legal expertise and strategic insight to our executive team, with a proven track record in corporate governance, compliance, risk management, contracts and business law. In this role she will lead our legal strategy and play a

critical role in guiding BlueStar through complex legal landscapes while supporting our mission and values.

Please join us in giving Delia a warm welcome to the team! We look forward to the leadership and perspective that she will bring to BlueStar.

53. As confirmed in the above e-mail announcement, in her role as General Counsel Plaintiff reported directly to Girvin as CEO, which was the same reporting structure of Plaintiff's male predecessor Mr. Rosenstiel.

54. As also confirmed in the above e-mail announcement, Plaintiff's job duties included leading BlueStar's legal strategy, and guiding or otherwise advising the company on complex legal matters, again similar to Plaintiff's male predecessor Mr. Rosenstiel.

55. Like Mr. Rosenstiel, Plaintiff served as BlueStar's General Counsel and Corporate Secretary and was responsible for the Company's entire legal function.

56. Her duties included advising Girvin and other executives on legal and corporate governance matters; serving as Corporate Secretary, including reviewing the Company's minutes, bylaws and resolutions to confirm history of corporate actions; maintaining the corporate records; advising on a potential sale of the company; advising on labor and employment matters; engaging and overseeing outside counsel; managing the legal budget and approving legal invoices; managing litigation and BlueStar's intellectual property portfolio; and drafting and negotiating a wide range of commercial contracts.

57. On November 13, 2025, and consistent with Plaintiff's role as General Counsel, BlueStar's Board of Directors voted unanimously to appoint Ms. Reid as the BlueStar's Corporate Secretary.

58. Despite Plaintiff performing the above job functions and duties commensurate with her General Counsel role, BlueStar, Girvin, Von Hoene, and Bolen determined to pay Plaintiff at

a substantially lesser rate than her male counterparts, including her predecessor Mr. Rosenstiel and other similarly situated male employees on BlueStar's executive team.

59. Upon information and belief, male BlueStar executives on the same team as Plaintiff were paid over $300,000 + in salary, while Plaintiff was only paid $200,000.00.

60. During Plaintiff's employment, BlueStar, Girvin, Von Hoene, and Bolen also took actions to hide the substantial pay disparity between Plaintiff and Mr. Rosenstiel and other male executives, including engaging in a corporate restructuring which amounted to a demotion of Plaintiff's role.

61. On November 3, 2025, approximately 28 days after Plaintiff's hire, Defendant Girvin sent an e-mail announcement of "Key Leadership Promotions" and reporting changes.

62. Girvin's e-mail announced that various executives had been "promoted" and given new titles, including its Chief Operating Officer (COO), Chief Marketing Officer (CMO), Chief People Officer (CPO), Senior VP of Sales, VP of Supply Chain, and VP of Purchasing.

63. Within that same November 3, 2025 e-mail, Girvin also stated that the new COO, Manel Baranera, an executive located in the Netherlands, "will now oversee IT, Purchasing, Operations, **and Legal[.]**"

64. The email announcement did not mention Plaintiff, did not refer to the General Counsel, and did not state that Plaintiff's role or reporting line had changed.

65. On November 25, 2025, at a meeting attended by Plaintiff, Bolen, Von Hoene, and Baranera, Defendant Bolen presented an updated organizational chart consistent with Girvin's November 3 e-mail announcement.

66. The new organizational chart removed the General Counsel as a direct report to the CEO on the executive team, and placed the position within a newly created department labeled "Legal," which reported to Baranera (the Netherlands COO), whom in turn reported to the CEO.

67. [redacted][1]

68. While the chart makes reference to a "Legal" department, the reality was that BlueStar had only one employee in that department—Plaintiff—who continued to serve as the BlueStar's General Counsel.

69. Moreover, while the chart depicted Plaintiff reporting to the COO in the Netherlands, Plaintiff continued to report directly to Girvin as CEO up until the date of her termination and at no time did Girvin, Bolen, Von Hoene nor Manel Baranera discuss how the reporting change would be implemented.

70. [redacted].

71. On November 25, 2025, the same day as this meeting in which the new organizational structure was provided, Plaintiff e-mailed Girvin raising concerns about the new reporting structure, and offering to discuss her concerns the next day.

72. Girvin did not respond to this e-mail.

---

[1] Several allegations have been redacted in whole or in part as they may include information that is subject to a Confidentiality / Non-Disclosure Agreement between Plaintiff and BlueStar, or information that is subject to attorney-client privilege. The allegations will be made available for the Court's review in a filing under seal, to the extent the Court approves leave for submitting such a sealed complaint.

73. On December 1, 2025, Plaintiff again e-mailed Girvin regarding her concerns.[2]

74. In response, Girvin met in person with Plaintiff that day, expressing his anger that Plaintiff put her concerns in writing and informing her that, "this is not how things are done here."

75. After a more than two-hour meeting, Girvin dismissed Plaintiff's concerns as nothing more than "personal."

76. In this meeting, Plaintiff also asked Girvin if she was still BlueStar's General Counsel and Girvin confirmed that she was.

77. Following Ms. Reid's attempts to raise these concerns on November 25, 2025 and December 1, 2025, Girvin, Von Hoene, Bolen, and other executives at Bluestar changed their behavior and actions toward her, including limiting her work and oversight of BlueStar, and excluding her from relevant Board matters.

78. During the week of December 8, 2025, Plaintiff was excluded from a "budget/compensation planning" board/executive meeting in Key West, Florida.

79. Upon information and belief, the entire executive team except Plaintiff was invited to attend this meeting.

80. BlueStar's prior General Counsel Jeff Rosenstiel had always attended the meeting in the past.

81. The General Counsel's attendance at this meeting is typically necessary, both because the General Counsel serves as the Corporate Secretary, and is needed to advise on any relevant legal implications of budget and compensation planning decisions.

---

[2] Because Plaintiff's e-mail to Girvin may constitute an attorney-client privileged communication, Plaintiff has not and will not publicly share the content of that e-mail. To the extent necessary and with the Court's leave Plaintiff will submit that e-mail under seal for purposes of adequately pleading her claims. More generally, Plaintiff will ensure that she preserves any attorney-client privilege that applies to any communications she utilizes to support this claim, if and when she asserts it, through mechanisms such as a protective order, sealed filings, and in-camera review, as appropriate and directed by the Court.

82. The case was no different in 2025 in light of many of the concerns raised by Plaintiff to Girvin, inlcuidng in her December 1, 2025 e-mail.

83. Upon information and belief, Plaintiff was excluded from this meeting because she had previously raised concerns to Girvin regarding the restructuring and other legal issues.

84. Additionally, Plaintiff was excluded from this meeting to avoid her becoming aware of the substantial pay disparities between Plaintiff and her male counterparts on BlueStar's executive team, along with her predecessor Jeff Rosenstiel.

85. In addition to exclusion from this meeting, Girvin also began pushing back on any job tasks Plaintiff attempted to perform in her General Counsel role.

86. During January and February 2026, Plaintiff continued to be excluded from meetings and discussions with Girvin and other key executives.

87. This included discussions with a potential acquirer of BlueStar, TD Synnex, whom has more recently announced its acquisition of BlueStar.[3]

88. In the first month of Plaintiff's employment, BlueStar had introduced Plaintiff to this potential acquirer as BlueStar's General Counsel, and Plaintiff negotiated a non-disclosure agreement with TD Synnex pertaining to the potential acquisition.

89. Girvin also included Plaintiff in correspondence disclosing information to TD Synnex, including identifying Plaintiff as BlueStar's General Counsel.

90. Despite this, following the December 1 meeting in which Plaintiff raised legal concerns, Girvin began excluding Plaintiff from such meetings and discussions with TD Synnex.

---

[3] https://ir.tdsynnex.com/news/news-details/2026/TD-SYNNEX-Announces-Entering-Into-a-Definitive-Agreement-to-Acquire-BlueStar/default.aspx

91. On Thursday, February 19, 2026, Plaintiff was made aware that an employee at BlueStar had been forwarded e-mails containing highly confidential information subject to confidentiality and non-disclosure obligations.

92. The employee at issue was not an authorized recipient of the confidential information

93. The confidential information was highly sensitive, and disclosure to an unauthorized recipient risked BlueStar violating confidentiality and non-disclosure obligations.

94. That same day, Plaintiff e-mailed Girvin informing him [redacted].

95. Approximately an hour later, Plaintiff called Girvin's cell phone and left a voicemail to follow up with Girvin on [redacted].

96. Plaintiff also e-mailed Girvin asking for time to speak with him about [redacted].

97. [redacted], Plaintiff contacted the employee who had received the e-mails to mitigate the risk of further unauthorized disclosures.

98. In doing so, Plaintiff explained that the e-mails should not have been sent to the employee, and confirmed he would keep the information confidential and not disclose it to others.

99. Upon investigation, Plaintiff was unable to confirm whether the employee had a signed confidentiality agreement with BlueStar, nor the terms of that agreement.

100. As a further effort to mitigate against risk of the unauthorized disclosure, Plaintiff inquired to the employee about his willingness to sign an updated confidentiality and non-disclosure agreement.

101. The employee agreed to do so without issue.

102. After speaking with the employee and [redacted], Plaintiff e-mailed Girvin [redacted].

103. In response, Girvin directed Plaintiff [redacted]

104. The next day, February 20, 2026, Girvin, with Bolen present, held a video conference with Plaintiff in which Girvin and Bolen informed Plaintiff that they were terminating her employment.

105. Girvin gave Plaintiff no reason for the termination, but stated to Plaintiff the Board had approved it.

106. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on April 28, 2026, alleging violations of the Equal Pay Act and Title VII .

107. The EEOC issued Plaintiff a Notice of Right to Sue on September 23, 2026, a copy of which is attached as Exhibit 1.

108. In response to the charge of discrimination, BlueStar admitted that it paid Mr. Rosenstiel a higher salary than Plaintiff, but asserted for the first time that, Plaintiff was not in fact BlueStar's General Counsel and did not serve in a role similar to Mr. Rosenstiel.

109. The stated reasons for the pay disparity are false, are contradicted by oral and written communications, Board minutes, and other documentation, and are nothing more than a pretext for pay discrimination.

110. Bluestar has also asserted that it terminated Plaintiff for poor performance and insubordination.

111. That reason is also false, and pretextual. It has no basis in fact, was never communicated to Plaintiff before or at her termination, and did not actually motivate BlueStar's decision.

112. To the extent the alleged "poor performance and insubordination" did motivate BlueStar's termination decision, other male employees who engaged in similar conduct Plaintiff is alleged to have engaged in were treated more favorably.

113. Girvin, Von Hoene, Bolen, and Bluestar treated Plaintiff differently than her male peers on the executive leadership team because of her sex, both during her employment as General Counsel and in terminating her employment.

114. BlueStar, Girvin, Von Hoene, and Bolen retaliated against Plaintiff because of her protected activity in opposing the reorganization, demotion, and efforts to mask the pay disparity between Plaintiff and other male executives.

115. Defendants engaged in such conduct to deter Plaintiff's protected activity and to continue masking the discrimination in pay, including dismissing Plaintiff's raised concerns, excluding her from meetings, and terminating her employment.

**Allegations Specific to Wrongful Termination in Violation of Public Policy (Kentucky)[4]**

[redacted]

[redacted]

[4] These allegations have been redacted as they may include information that is subject to a Confidentiality / Non-Disclosure Agreement between Plaintiff and BlueStar. The allegations will be made available for the Court's review in a filing under seal, to the extent the Court approves leave for submitting such a sealed complaint.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**<u>COUNT I: WAGE DISCRIMINATION - EQUAL PAY ACT / EPA (29 U.S.C. § 206(d))</u>**

*All Defendants*

136. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

137. Defendant BlueStar is an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and is subject to the requirements of the Equal Pay Act.

138. Defendants Girvin, Bolen, and Von Hoene are also "employers" within the meaning of the FLSA and EPA, in that each exercised sufficient operational control over the hiring of Plaintiff, determining her compensation and title, and terminating her employment.

139. Upon information and belief, Girvin specifically has an ownership interest in BlueStar, and as CEO is empowered to act on BlueStar's behalf including in compensation decisions with respect to Plaintiff and other executives.

140. Likewise, Von Hoene, as CFO of BlueStar and the financial officer of BlueStar, had the authority and obligation to approve all compensation terms for BlueStar executives including Plaintiff.

141. Bolen as VP of Human Resources (and later Chief People Officer) had the authority and obligation to recommend compensation of executives on their hiring including Plaintiff, and exercised that authority with respect to Plaintiff.

142. Plaintiff and Mr. Rosenstiel performed equal work on jobs requiring substantially equal skill, effort, and responsibility.

143. Plaintiff and Mr. Rosenstiel performed under similar working conditions, including reporting to the same supervisor (the CEO), worked at the same office location, performed as General Counsel & Corporate Secretary for BlueStar, were responsible for the entire legal function for BlueStar, and performed the same job duties commensurate with the General Counsel role.

144. Despite the equal work, Defendant paid Plaintiff a significantly lesser rate of compensation than it did to Mr. Rosenstiel.

145. The wage differential between Plaintiff and Mr. Rosenstiel was based on sex and not on any other factor permitted under the Equal Pay Act.

146. Defendants' discriminatory practice was willful.

147. As a direct and proximate result of Defendant BlueStar, Girvin, Von Hoene, and Bolen's violations of the Equal Pay Act, Plaintiff is entitled to all remedies available to her under the Equal Pay Act, including back pay, reinstatement or front pay in lieu thereof, liquidated damages, pre-judgment and post-judgment interest, and recovery of attorney's fees and expenses.

**COUNT II: GENDER DISCRIMINATION – TITLE VII (42 U.S.C. § 2000e-2 *et seq.*)**

*Defendant BlueStar*

148. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

149. Defendant BlueStar discriminated against Plaintiff on the basis of her gender both in her hiring and during her employment as Bluestar's General Counsel, including in her offered compensation, in reprimanding her for performing her role as General Counsel, and in terminating her employment for what BlueStar claims is "poor performance and insubordination."

150. BlueStar treated other male employees more favorably than Plaintiff, including Plaintiff's male predecessor Jeff Rosenstiel, and other male executives on the BlueStar executive team that are similarly situated to Plaintiff.

151. Defendant's stated reasons for treating Plaintiff differently are a pretext for gender discrimination, in that the reasons given have no basis in fact, did not actually motivate BlueStar, and/or are insufficient to explain the reasons for BlueStar's actions.

152. BlueStar committed the above-referenced discriminatory acts with malice and/or reckless indifference to the rights of Plaintiff.

153. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to all remedies available to her under Title VII, including back pay, reinstatement or front pay in lieu thereof, emotional distress and other compensatory damages, pre-judgment and post-judgment interest, and recovery of attorney's fees and expenses.

154. Additionally, because Defendants' actions were with malice and/or reckless indifference to the rights of Plaintiff, Plaintiff is also entitled to an award of punitive damages.

**COUNT III: GENDER DISCRIMINATION – KENTUCKY (KRS § 344.040)**

*Defendant BlueStar*

155. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

156. The allegations which state a cause of action under Title VII for gender discrimination likewise state a cause of action under KRS 344.040 *et seq.*

**COUNT IV: RETALIATION – EQUAL PAY ACT – EPA (29 U.S.C. § 215(a)(3)**
*All Defendants*

157. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

158. Plaintiff engaged in protected activity including by opposing discrimination in pay based upon gender, and further efforts to hide such pay disparities via a demotion in Plaintiff's role.

159. Defendants knew of Plaintiff's protected activity, including in e-mails and discussions between Plaintiff and Defendant Girvin.

160. Upon information and belief, Defendant Girvin shared Plaintiff's e-mail and concerns regarding the demotion with other BlueStar executives, including Defendants Von Hoene and Bolen.

161. Subsequent to BlueStar becoming aware of Plaintiff's protected activity, Defendants took adverse actions against Plaintiff, including excluding her from relevant board and executive meetings and dealings, micromanaging and unfairly criticizing her work, and terminating her under the guise of "poor performance and insubordination."

162. A causal connection exists between Plaintiff's protected activity and BlueStar's adverse actions.

163. Defendant's stated reasons for Plaintiff's termination are a pretext for retaliation.

164. Defendant's retaliatory practice was willful.

165. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff is entitled to all remedies available to her under the Equal Pay Act, including back pay, reinstatement

or front pay in lieu thereof, liquidated damages, pre-judgment and post-judgment interest, and recovery of attorney's fees and expenses.

**COUNT V: RETALIATION – TITLE VII (42 U.S.C. § 2000e-3 *et seq.*)**

*Defendant BlueStar*

166. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

167. Plaintiff engaged in protected activity including by opposing discrimination in pay based upon gender, and efforts to hide such pay disparities via a demotion in Plaintiff's role and corporate reorganization.

168. Defendant knew of Plaintiff's protected activity, [redacted].

169. Upon information and belief, Defendant Girvin shared Plaintiff's e-mail and concerns raised regarding the demotion with other BlueStar executives, including Defendants Von Hoene and Bolen.

170. Subsequent to BlueStar becoming aware of Plaintiff's protected activity, Defendants took adverse actions against Plaintiff, including excluding her from relevant board and executive meetings and dealings, micromanaging and unfairly criticizing her work, and terminating her under the guise of "poor performance and insubordination."

171. A causal connection exists between Plaintiff's protected activity and BlueStar's adverse actions.

172. Defendant's stated reasons for Plaintiff's termination are a pretext for retaliation.

173. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to all remedies available to her under Title VII, including back pay, reinstatement or front pay in lieu

thereof, emotional distress and other compensatory damages, pre-judgment and post-judgment interest, and recovery of attorney's fees and expenses.

174. Additionally, because Defendants' actions were with malice and/or reckless indifference to the rights of Plaintiff, Plaintiff is also entitled to an award of punitive damages.

**COUNT VI: RETALIATION – KENTUCKY (KRS § 344.040 *et seq.*)**
*Defendant BlueStar*

175. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

176. The allegations which state a cause of action under Title VII for retaliation likewise state a cause of action under KRS 344.040 *et seq.*

**COUNT VII: CONSPIRACY TO VIOLATE – KENTUCKY (KRS § 344.280)**
*All Defendants*

177. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

178. Defendants Girvin, Von Hoene, and Bolen conspired to retaliate or otherwise discriminate against Plaintiff because she opposed a practice declared unlawful by the Kentucky Civil Rights Act, Chapter 344.040 *et seq.*

179. This includes, but is not limited to, BlueStar's practice of paying Plaintiff, a female, substantially less than her male predecessor and counterparts.

180. Defendants took actions against Plaintiff including those alleged above, such as excluding her from relevant meetings, micromanaging her work, and terminating her under the guise of "poor performance and insubordination."

Because Defendants Girvin, Von Hoene, and Bolen conspired to retaliate or otherwise discriminate against Plaintiff, they are subject to individual liability under KRS § 344.280.

**COUNT VIII: FRAUDULENT INDUCEMENT – KENTUCKY**
*All Defendants*

181. Plaintiff restates each and every claim set forth above as if fully rewritten herein.

182. Defendants made a material representation to Plaintiff that it was offering her a position as BlueStar's General Counsel, in a role commensurate with the role held by her predecessor Jeff Rosenstiel.

183. This was affirmed in multiple interviews with Plaintiff for the role, in her offer letter, in board minutes, and in e-mail announcements concerning Plaintiff's hiring.

184. Defendants Bolen, Girvin, and Von Hoene all made such representations during interviews with Plaintiff.

185. This representation was false, in that BlueStar now asserts that despite the representations, this position was in fact a role for a "staff attorney" or "contract attorney," which would primarily conduct contract review and did not hold the fiduciary title or role commensurate with General Counsel.

186. Defendants knew their representations to Plaintiff were false when made, and have admitted that the representation was false in that they now claim Ms. Reid's role as "General Counsel" was in title only and that her duties are in no way similar to her predecessor Jeff Rosenstiel.

187. Defendants made these representations with the intention of inducing Plaintiff to act upon them, including by resigning from her secure employment at Baker Hostetler in order to accept a full-time position represented to be General Counsel of BlueStar.

188. Plaintiff acted in reliance upon these representations to her detriment, whereby she accepted the role, performed job duties commensurate with the role, and was terminated four months later for performing such job duties commensurate with the role.

189. Plaintiff's reliance on the representations was reasonable, in that she had no reason to disbelieve that the role offered to her was for General Counsel.

190. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages including lost wages and benefits; loss of future earnings and earning capacity; injury to her professional reputation and standing in the legal community, impairment of her ability to obtain comparable in-house and General Counsel positions; and compensatory damages including emotional distress and mental anguish.

191. Defendants' actions toward Plaintiff were made with oppression, fraud, malice, and a wanton or reckless disregard for the lives, safety, or property of others such that an award of punitive damages for Defendants' conduct is appropriate.

**COUNT IX: WRONGFUL DISCHARGE IN CONTRAVENTION OF PUBLIC POLICY**

*All Defendants*

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

WHEREFORE, having set forth her claims against Defendant, Plaintiff prays for the following relief against Defendant:

A. As to Count I, enter a judgment in favor of Plaintiff and against Defendant BlueStar in an amount to be determined at trial, including for back pay in the amount of unpaid wages

owed to Plaintiff, an equal amount as liquidated damages, pre and post judgment interest, attorney's fees and costs, and all other relief to which Plaintiff is entitled;

B. As to Count II-VII, enter a judgment in favor of Plaintiff and against Defendant BlueStar and other Defendants (as applicable) in an amount to be determined at trial, including for lost wages, lost benefits, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages as applicable, pre and post judgment interest, attorney's fees and costs, and all other remedies to which Plaintiff is entitled;

C. As to Count VIII, enter a judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial, including for actual pecuniary compensation for the injury sustained due to Defendants' fraudulent conduct, along with punitive damages, pre and post judgment interest, attorney's fees and costs, and all other relief to which Plaintiff is entitled;

D. As to Count IX, enter a judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial, including for lost wages, lost benefits, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages, pre and post judgment interest, attorney's fees and costs, and all other relied to which Plaintiff is entitled

E. As to all claims, all other legal or equitable relief that the Court deems warranted.

Respectfully submitted,

/s/ *Joshua M. Smith*
Peter A. Saba (0084574)
Joshua M. Smith (098835)
SSP Law Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-6715
(513) 533-2999 – facsimile
jms@sspfirm.com
*Counsel for Plaintiff Delia Reid*

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

/s/ *Joshua M. Smith*
Joshua M. Smith (098835)